Victor Hugo Elias Garces, Plaintiff-Appellee, v. Department of Registration and Education of the State of Illinois, Dental Examining Committee of Said Department, and William H. Robinson, Director of Said Department, Defendants-Appellants.

Gen. Nos. 53,934, 54,020.

First District, Second Division.

December 16, 1969.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel), for appellants.

Joseph Minsky, of Chicago, for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal by the defendants from an order of the Circuit Court in a proceeding under the Administrative Review Act (Ill Rev Stats (1967), c 110, §§ 264–279 inclusive), which order found that: (1) Rules V–A and V–B of the dental section of the Department of Registration and Education of the State of Illinois are void as being arbitrary and discriminatory; (2) the decision of the Department denying plaintiff admission to the examination for a license to practice dentistry in Illinois was against the manifest weight of the evidence and was reversed; (3) the plaintiff was entitled to take the exami-

nation; and (4) the Department was directed to admit the plaintiff to the dental licensing examination the next time it was given.

In September, 1967, the plaintiff filed his application for admission to the Illinois dental licensure examination. The application was accompanied by diplomas evidencing the degrees of Bachelor of Dentistry and Dental Surgeon from the Main National University, San Marcos of Lima, Peru; certified copies of course records covering the applicant's four years of training in dentistry and one year of predentistry education at the Main National University, San Marcos; certified copies of documents showing the courses taken by him and grades earned during his five years of high school education required in Peru; a certificate from the Ministry of Health and Social Welfare of Peru certifying applicant as a registered oral surgeon in that country; a statement from a former employer that the applicant had been employed as an oral surgeon between 1958 and 1962; a statement of the Police Investigation Department that applicant had served as Orthodontologist at the National School of Police Investigations; a declaration of intention to become a citizen of the United States filed by the applicant in the Federal District Court in Chicago; recommendations from two individuals licensed to practice dentistry in the State of Illinois; scores earned by the applicant on the Science Achievement Examination of the American Dental Association; and a statement by the applicant relating to his experience and background.

In December, 1967, the Dental Examining Committee of the Department denied plaintiff's application for entrance to the examination on the grounds that the Committee had concluded that the dental school from which he had graduated did not have rules and curricula commensurate with those of the University of Illinois Dental School, such conclusion being based upon the refusal of the University of Illinois to admit him to advanced train-

ing courses at its School of Dentistry. The denial was further based upon the finding of the Committee that the school from which plaintiff graduated was not accredited by the Council on Dental Education of the American Dental Association. These two bases of denial are established, under Rules V–A and V–B of the Department, as criteria for determining the reputability of dental schools.

Thereafter plaintiff filed his complaint for judicial review of the Department's final administrative decision alleging, inter alia, that the denial of admission by the Department violated his constitutional rights in that Rules V–A and V–B are contrary to the Constitutions of Illinois and the United States since the rules were not promulgated by the Department but rather the Department unconstitutionally delegated its rule-making power to two outside bodies, the University of Illinois College of Dentistry and the American Dental Association. It was alleged that it was the actions of these bodies that established the criteria which the Department applied in determining the reputability of dental schools. The defendants' answer to this complaint consisted of the application and attendant documents submitted to them by the plaintiff.

In the first of three amendments to the complaint, the plaintiff alleged, inter alia, that the actions of the Department violated his rights under the Fourteenth Amendment of the United States and under section 2 of Article II of the Illinois Constitution in that its conduct was arbitrary and discriminatory and operated to deprive him of property without due process of law since the Department had delegated, to two outside bodies, its statutory duty to determine the reputability of dental schools. In April, 1968, the Circuit Court entered an order reversing the decision of the Department which had denied plaintiff admission to the dental licensing examination. The trial court, retaining jurisdiction of the

case, also remanded the cause to the Department and its Dental Examining Committee for a hearing on the question of whether the dental school from which the plaintiff graduated is a reputable one. Pursuant to this order, the Dental Examining Committee held a hearing in July, 1968, at which the following evidence was presented.

The plaintiff called as a witness Dr. Martin Unterman, a graduate of the University of Illinois Dental School and a licensed dentist in Illinois. He testified that he had, at the time of the hearing, employed the plaintiff as a laboratory technician for two years and during that time had conversed with him about dentistry. The witness testified that he had concluded from those conversations that the plaintiff was as knowledgeable as the graduates of American Dental Schools and that plaintiff's training was comparable with that offered in American dental schools. Dr. Unterman also testified that if the plaintiff were allowed to take the examination and passed it, he would be considered for a position with the witness as a practicing dentist. During the past two years, the plaintiff had been in charge of the laboratory supervising four other employees and aiding in the complete reconstruction of dentures. Dr. Unterman stated that during this time the plaintiff had done the most technical work that could be done in dentistry in the laboratory. Dentists could not do this kind of work unless they had a good background and training for it.

The plaintiff then introduced into evidence a letter addressed to and received by Dr. Unterman. It was written by T. M. Graber, D.D.S., M.S.D., Ph.D., whom Unterman identified as a former professor at Northwestern University and other schools, an authority on dentistry throughout the world who had lectured in many foreign countries, an author of a dental textbook concerning orthodontics, and a highly respected dentist. In his letter Dr. Graber supplied the following information concerning San Marcos University:

210

"San Marcos is the oldest university in the western hemisphere. I have been there and lectured at the dental school and know some of the faculty personally. The dental school is one of the better ones in South America, is supported heavily with Kellogg funds, and has had a number of its faculty trained in the United States. I would think that the training is comparable with a number of schools in the United States, and superior to many throughout the world."

Also admitted into evidence was an extract from the World Directory of Dental Schools, 1963, prepared by the World Health Organization and published by Columbia University Press which publication indicated that the dental course in Peru required four years of study with a nine-month academic year and a University faculty. Instruction is in the form of lectures and clinical and practical work. A student gains admission to the dental school if he has successfully completed one year of predental work conducted in the University faculty of science. Admission to predental school is limited and is handled by a Selection Board composed of the professors of the respective faculties of science and dentistry. To obtain a degree of Dental Surgeon, the candidate must fulfill four conditions precedent: (1) successfully complete the four-year dental course; (2) present and defend a thesis; (3) pass a written qualifying examination in medicine; and (4) pass a qualifying examination, written and practical, in dentistry.

The plaintiff then testified and stated that his education in Peru consisted of five years of elementary school, five years of secondary or high school, one year of predental school in the Science Faculty, and four years of dental school. His educational background was a normal one for a professional school graduate based upon a long established school system existing in Peru. The plaintiff

went on to state that he was twenty when he entered dental school; that examinations and consideration of past academic achievement are the criteria used when application is made for predental and dental school at the University; that many applicants are not admitted; and that the school term in dentistry runs for nine months, from April through December. From January through March, the student is working in the summer clinic and is gaining practical experience. The plaintiff described in some detail the courses he had taken in dental school, the practical work required, his independent research in support of his thesis, and his final examinations for the degree of Dental Surgeon. In Peru, one can practice dentistry upon earning this degree. No other licensing examination is required.

The plaintiff then identified certain professional articles written by some of his teachers in the dental school. One of his general pathology professors had received a grant of $4,000 from the Damon Runyon Memorial Fund for Cancer Research. The plaintiff also identified photographs of the various laboratories and clinics at the dental school and a list of books kept in the dental school's library, some of which were in the English language. These items were then introduced into evidence and made a part of the record. Finally, the witness testified that at the time of his attendance San Marcos was the only dental school in Peru; that prior to moving to the United States he was a general practitioner of dentistry in Lima, Peru, for seven years and also worked part time for the government in his professional capacity; and that he had scored above seventy-five in every one of the ten subjects covered in the two-day Science Achievement Examination of the American Dental Association which examination he had taken in the United States in 1967. Based on his observation of the practice of dentistry in the United States, he believed himself qualified to practice his profession here. In conclusion, the plaintiff stat-

212

ed that graduates of the University of San Marcos Medical School were allowed to take the medical examination in the United States; that he knew some such graduates who now lived and practiced their profession in Chicago; that the dental school is of the same quality as the medical school of the University of San Marcos; and that he was married and lived with his wife and two children in Chicago. This concluded the evidence offered in behalf of the plaintiff.

The Department of Registration and Education then called as a witness Mr. John Cody, assistant secretary for the Council on Dental Education of the American Dental Association. He explained that the Council is composed of nine people with three coming from the American Dental Association, three from the American Association of Dental Examiners, and three from the American Association of Dental Schools. Their task is to accredit dental schools if the educational institution meets the minimum requirements set by the Council. Schools are visited at least once every seven years and evaluated on the basis of administration, facilities, curriculum, faculty, libraries, research, advanced studies, and student achievement. The Council has no mechanism for accreditation of dental schools located outside the United States with the single exception of Canadian schools, which are accredited by reciprocal agreement with the Council on Education of the Canadian Dental Association. Prior to the existence of this agreement, Canadian schools of dentistry were not accredited in the United States. Cody did not know if the dental school from which the plaintiff had graduated was or was not a reputable one. It was not on the Council's list of approved dental schools, but the school had never been tested by the Council with respect to the Council's criteria and no plans had been formulated with respect to evaluating, for purposes of accreditation, dental schools located in South America. Cody was not personally famil-

213

iar with the dental school at Main National University, San Marcos. He did state that a foreign dental school could be reputable although not on the Council's accreditation list.

The final witness called was Anthony J. Diekema, Director of Admissions and Records of the University of Illinois, Medical Center campus in Chicago, Illinois. He was not a dentist but held a Ph.D. degree in Sociology and Education and determined the educational qualifications of applicants for admission to the dental school of the University of Illinois. He stated that in considering applications for the admission of foreign dental graduates, their foreign academic background, their scores on the American Dental Association Science Achievement Examination, their proficiency in the English language, and recommendations from professors under whom they had studied or colleagues with whom they had worked in the United States are the factors which must be evaluated. These criteria are used in screening applicants for admission but do not constitute a basis for evaluating the reputability of the dental schools from which they graduated. Diekema had no personal knowledge regarding the Main National University, San Marcos of Lima, Peru.

Two months later, the Dental Examining Committee found that the Main National University, San Marcos dental school is not a reputable dental school within the meaning of the Illinois Dental Surgery Act (Ill Rev Stats (1967), c 91, §§ 56–72 inclusive) in that the school neither has rules and curricula commensurate with that of the University of Illinois dental school, nor has been accredited by the Council on Dental Education of the American Dental Association. The Committee also found that the plaintiff's dental school did not include, as part of its curriculum, sufficient clinical experience in Orthodontics, Pedodontics, Periodontics, or Prosthodontics.

214

The plaintiff thereafter filed his petition for reconsideration of the Committee's findings which petition mentioned that he had been admitted to the University of Illinois dental school as a student with advanced standing. He later filed the second and third amendments to his complaint. The second amendment detailed the evidence presented to the Dental Examining Committee, its decision, and asserted that this decision was opposed to the manifest weight of the evidence and, in addition, Rules V–A and V–B of the Department were unconstitutional for the same reasons alleged in the first amendment to the complaint. The third amendment to the complaint alleged that the Director of the Department of Registration and Education had denied the petition for reconsideration and asserted that this was error for the reasons alleged earlier in the complaint and the two amendments thereto. After the Department filed its answer to these pleadings which answer consisted of the report of proceedings of the hearing before the Dental Examining Committee and a copy of the denial of the petition for reconsideration, the trial court entered its final order in favor of the plaintiff and against the defendants from which the defendants appeal seeking a reversal.

The defendants urge that Rules V–A and V–B of the Department are reasonable, necessary and constitutional and that the plaintiff did not meet his burden, before the Dental Examining Committee, of establishing by satisfactory proof that he is a graduate of and has a diploma from the faculty of a reputable dental college, dental school, or dental department of a reputable university.

In section 58a of the Illinois Dental Surgery Act (Ill Rev Stats (1967), c 91, §§ 56–72 inclusive), the Legislature has placed with the Department of Registration and Education the power to prescribe rules and regulations defining what shall constitute a reputable dental

school, college, university, or department of a university as well as determining such reputability, when the need arises, by reference to a compliance with such rules and regulations. By virtue of the same section of this statute, the Director of the Department exercises these rule-making and determination powers only upon the action and report in writing of a majority of the Dental Examining Committee of the Department. This Committee is composed of seven persons appointed by the Director from time to time, each of whom has been a licensed practitioner of dentistry or dental surgery in Illinois for five years or more and none of whom is in any way connected with or interested in any dental college or dental department of any institution of learning. In section 66 of the Dental Surgery Act, the Legislature has provided the detailed requirements for the recognition, in Illinois, of a dental license granted by a licensing board of another state or territory. If this other license is recognized by the Department, the dentist need only pass the practical examination as he is excused from the written examination in theory. Since 1915 the Legislature has limited reciprocity to properly licensed dentists who otherwise meet the detailed statutory requirements found in chapter 91, section 66, and who come into Illinois from other states or territories. The statute does not extend reciprocity to graduates of dental schools located abroad or in Canada, Mexico, or Cuba who come to Illinois to reside. These dentists, to lawfully practice their profession in Illinois, must apply for admission to take the dental licensing examination although they might have practiced dentistry in their native lands.

Section 58 of the Dental Surgery Act requires, in relevant part, that this application be sent to the Department of Registration and Education and that the applicant must present satisfactory proof that he: (1) is of good moral character; (2) is a citizen of the United States or has made a declaration of intention to become

216

one and has filed a petition for naturalization within thirty days after becoming eligible to do so; (3) is twenty-one years of age or over at time of application; and (4) is a graduate of, and has a diploma from, the faculty of a reputable dental college, school or dental department of a reputable university. If satisfied, the Department then notifies the applicant to appear at a specified time and place for a written examination in all theoretic subjects as well as a practical examination. Pursuant to section 58a of the statute, the Department of Registration and Education has the duty of conducting examinations and issuing dental licenses to the successful applicants on the report in writing of the Dental Examining Committee. Section 58 of the Dental Surgery Act requires that no person can begin to practice dentistry or dental surgery in Illinois without first applying for and obtaining a license for such purpose from the Department. Finally, section 62(f) provides that all final administrative decisions of the Department are subject to judicial review pursuant to the Administrative Review Act (Ill Rev Stats (1967), c 110, §§ 264–279 inclusive).

In accordance with the rule-making power granted by the Legislature to the Department of Registration and Education allowing the state administrative agency, on the written report of a majority of the members of its Dental Examining Committee, to prescribe rules and regulations defining what shall constitute a reputable dental school, college, university, or department of a university, the Department has adopted Rules V–A and V–B. These rules specify two alternative ways in which a dental educational institution will be classified as reputable thereby allowing its graduates to be admitted to the Illinois dental licensure examination if reciprocity is not permitted. Rule V–B says that if the dental school has been approved by the Council on Dental Education of the American Dental Association, the Department will consider it to be reputable. Rule V–A states that if the

particular dental school has rules and curricula commensurate with and equivalent to the rules and curricula of the University of Illinois, College of Dentistry, the Department will consider it to be reputable.

The instant case does not involve any claimed unlaw- ful delegation of power by the Legislature to an administrative agency. What is involved is an alleged improper exercise, by the Department of Registration and Education, of a power properly delegated to it by the Legislature. The parties to this litigation have so briefed and argued their respective causes. Furthermore, the Department has never contended, in either the trial court or in this court of review, that the predental or high school education of the plaintiff is inadequate. Only the reputability of the dental school from which he graduated is involved in the case at bar. Inasmuch as the Department urges that its Rules V–A and V–B are reasonable, necessary and constitutional, we must first address ourselves to this point.

■ All parties to this litigation agree that the courts have the power and the duty to determine whether the rules of the Department are reasonable and impartial or are arbitrary and unreasonable. Kettles v. People, 221 Ill 221, 231–32, 77 NE 472, 475 (1906) ; People v. Love, 298 Ill 304, 313, 131 NE 809, 812 (1921) ; People ex rel. Schutz v. Thompson, 325 Ill App 95, 99, 59 NE2d 494, 497 (1945). The defendants contend that Rules V–A and V–B represent no delegation of any kind by the Department to two outside agencies but rather are a practical interpretation and guide as to what constitutes a reputable dental school. It is also asserted that the two rules set forth an easily ascertainable standard to be applied by the Department thereby avoiding confusion and distrust and represent a practical alternative since, without them, the Dental Examining Committee would have to visit every dental school throughout the world in order to determine by on-the-site inspections whether

or not it was reputable. We are not persuaded by such contentions. If a rule is unconstitutional, it does not become constitutional if it imposes an easily ascertainable standard. For the Dental Examining Committee to meet its legislative duty, we fail to see why it should be necessary for it to conduct on-the-site inspections of dental schools located throughout the world. If this Committee were to meet its duty by holding fact-finding hearings and inviting representatives of properly accredited dental schools in Illinois, it could draw on the expertise of these men interested in dental education as well as the knowledge of members of the Committee who are practitioners of dentistry and in this way could formulate a curriculum which would represent the minimum requirements of a reputable dental school. Such a curriculum could be presented to the Department which presumably would accept and promulgate it in its rules and regulations as a matter of record. The curriculum of other dental schools, no matter where located in the world, could then be compared with the minimum curriculum as formulated by the Committee. Future action would be determined by this comparison and on-the-site inspections of dental schools would be unnecessary. The level of instruction at these dental schools would be demonstrated, in the democratic tradition, by the grades of their students at the practical and theoretical dental licensing examination. Such a student, if otherwise qualified, would not be barred from taking such examination.

We find that Rules V–A and V–B are invalid as they represent an arbitrary and unreasonable delegation of power from the Department to two organizations independent of it. The Legislature has imposed a duty on the Department of Registration and Education, through its Dental Examining Committee, to pass rules and regulations defining a reputable dental school. By Rules V–A and V–B the Department has in turn unreasonably and arbitrarily delegated its duty to the American Dental

219

Association and the University of Illinois Dental School. Although the Legislature has looked to the Department to define the standard of reputability, the Department has, in turn, looked to two bodies independent of it. In People ex rel. Sheppard v. Illinois State Board of Dental Examiners, 110 Ill 180, 185 (1884), the court stated that whether a dental college is reputable or not is a question of fact which the statute submits to the decision of the administrative agency and no other tribunal is authorized to investigate the facts and exercise judgment and discretion in the matter. In Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill 227, 244, 13 NE 201, 203 (1887), the court held that it was error for the administrative agency to refer the matter of reputability to the National Association of Dental Examiners. The reviewing court also stated that the statute clothed the agency, and no other body, with the power to decide the question of reputability and that therefore it could not delegate its discretionary power to an organization beyond the limits of the State of Illinois.

 In the instant case, Rule V–B specifies that a dental school is reputable if it is on the list of dental schools approved by the Council on Dental Education of the American Dental Association. By this rule the Department has abdicated its responsibility, under the statute, to define the legislative standard of reputability and has thereby violated the legal principles enunciated in People ex rel. Sheppard v. Illinois State Board of Dental Examiners, 110 Ill 180 (1884) and Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill 227, 13 NE 201 (1887). Rule V–B has acted to the actual prejudice of the plaintiff since a representative of the Council on Dental Education of the American Dental Association testified that the Council has no mechanism for the accreditation of dental schools located outside the United States with the exception of Canada and yet the plaintiff was denied admission to

220

the examination. We hold that Rule V–B is arbitrary, unreasonable and invalid, being in violation of due process as protected by both the Federal and Illinois Constitutions.

██ Rule V–A is also invalid for the same reasons since the Department has not itself defined the legislative standard of reputability but has looked to the University of Illinois, College of Dentistry. No reason is suggested in this record why this should be the only dental school relied upon. Indeed, the educational standards existing at this school might well exceed the minimum standards to be found in a reputable dental school as determined by the Committee and recommended to the Department. Furthermore, the standard of reputability might possibly change due to alterations in the curriculum made at the University of Illinois College of Dentistry but rejected at other accredited dental schools in the State. Fairness to foreign and out-of-state applicants requires that the Dental Examining Committee meet its statutory duty by holding hearings and thereafter establishing its own uniform, reasonable, and minimum standard of educational requirements which would determine whether a dental school, no matter where located, be reputable. The Committee could invite, to its hearings, representatives from all accredited dental schools or colleges located in Illinois as well as representatives of the Council on Dental Education of the American Dental Association and the National Board of Dental Examiners. In this way the Committee itself will be acting as a fact-finding body in cooperation with representatives of dental education in Illinois as well as others from outside Illinois who will inform the Committee of the standards of dental education existing throughout the country. Relying upon the expertise of these representatives as well as their own expertise as practitioners, the Committee must ultimately establish a curriculum of subjects and total hours of instruction

221

in each subject to be taught by a competent faculty for a dental school to meet the minimum requirements of reputability. The Legislature, in section 58a of the Dental Surgery Act, has already stated that these subjects must be given in four courses of instruction of at least eight months each.

Alternatively, the Committee could prepare, after discussion with representatives of Illinois accredited dental schools, the American Dental Association, and the National Board of Dental Examiners, a list of dental schools found in Illinois whose curriculum is consistent with the minimum requirements of a reputable dental school. This list could then be recommended and presented to the Director for his approval, and the Department could thereafter promulgate it in its rules and regulations. The curriculum of applicants who have graduated from dental schools located throughout the United States, if reciprocity cannot be granted in a given case, as well as the curriculum of those applicants who have graduated from foreign dental schools can then be compared with the minimum curriculum of a reputable dental school as determined by the Committee or with the curriculum of reputable dental schools in Illinois which appear on the Committee's approved list. The applicant would then be accepted or denied admission to the examination. If the application is denied, the Committee could recommend that the Department adopt a rule stating that all rejected applicants are required to take such post-graduate work in a reputable dental school in this country as would cure the educational weakness and would entitle the applicant to take the examination later. In this way, the Department, through its Dental Examining Committee, would be determining and establishing its own independent definition of reputability and would be exercising its own professional expertise as the Legislature has sought to

be done and as the judiciary has stated must be done. We offer these alternatives only as suggestions and guidelines to the Dental Examining Committee and do so because the defendants have supported the validity of the Department's rules by contending that they are practical alternatives to the Committee's otherwise having to make on-the-site inspections of dental schools throughout the world.

■ Since the Legislature has decided that all applicants for the dental licensing examination must establish, by satisfactory proof, that he or she is a graduate of and has a diploma from a reputable dental school, we must examine the evidence to see if the plaintiff has met his burden of proof. In Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill 227, 13 NE 201 (1887), the court defined reputable as being "worthy of repute or distinction; held in esteem; honorable; praiseworthy." From the letter of Dr. Graber in which he stated that he had taught at the plaintiff's dental school and the training there is comparable with a number of schools in the United States; from the testimony of another dentist, Dr. Unterman, who stated that he had talked with the plaintiff and had concluded that he was as knowledgeable as the graduates of American dental schools and his training was comparable with that offered here and he continued to employ the plaintiff as a laboratory technician and supervisor of four other employees in the laboratory; from the educational information regarding the plaintiff's dental school contained in the World Health Organization's Directory of Dental Schools; from the testimony of the plaintiff himself regarding his dental education in Peru and from the documents admitted into evidence showing the courses he had taken there in dental school; and from the scores which the plaintiff earned in the Science Achievement Examination of the

American Dental Association, the conclusion is inescapable that he is, in fact, a graduate of and has a diploma from, a reputable dental school. He deserves the right to sit for the Illinois dental licensure examination.

■ The Committee also found that the plaintiff's dental school did not include, as part of its curriculum, sufficient clinical experience in Orthodontics, Pedodontics, Periodontics, or Prosthodontics. We have carefully searched the record and have found no evidence presented by the defendants against which the plaintiff's evidence could be compared on this point. We must conclude that the Dental Examining Committee went outside the record and acted on its own information when entering this finding. Due process of law requires, however, that findings must be based on evidence presented in the case so that an opportunity is given to all parties to cross-examine the witnesses and to offer evidence in rebuttal. Smith v. Department of Registration and Education, 412 Ill 332, 345–49, 106 NE2d 722, 729–31 (1952); Rutledge v. Department of Registration and Education, 77 Ill App2d 103, 123, 222 NE2d 195, 205 (1966). Since due process was not followed in the instant case, this finding of the Committee will not prevail.

The order is affirmed.

Order affirmed.

BURKE and McCORMICK, JJ., concur.